UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KATINA M. RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-120 |
| | ) | (PHILLIPS/GUYTON) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding the disposition by the District Court of the plaintiff's Motion For Judgment On The Pleadings [Doc. 11], and the defendant's Motion For Summary Judgment. [Doc. 15]. Plaintiff Katina M. Ray seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner.

**BACKGROUND**

Plaintiff was 35 years of age when the ALJ issued his decision (Tr. 10, 110). She has a high school education, with work experience as a sewing machine operator (Tr. 141). She alleges that she has been disabled since August 21, 2005, due to back pain and right leg problems (Tr. 110, 16). She asserts that the back surgery she had actually made her back pain worse, and also that she has a pinched nerve in the back which causes her leg to give out, causing her to fall (Tr. 18).

## MEDICAL RECORD EVIDENCE

The relevant medical record evidence is summarized as follows:

On March 10, 2004, upon referral from her family physician, Dr. Allred, plaintiff saw Robert S. Davis, M.D., a neurologist and spine surgeon, for complaints of back pain (Tr. 201). On examination, Dr. Davis reported positive straight-leg raising and numbness, tingling and weakness of the right leg (Tr. 201). He noted that an MRI showed a herniated disc (Tr. 201). Dr. Davis recommended physical therapy (Tr. 201). On April 7, 2004, Dr. Davis noted that plaintiff decided to proceed with surgery (Tr. 200). Dr. Davis performed back surgery on April 15, 2004 (Tr. 198, 203-06).

On June 9, 2004, Dr. Davis indicated that plaintiff returned and had clinically improved (Tr. 199). Dr. Davis indicated that plaintiff could return to work on light duty with no heavy repetitive bending, twisting, or lifting more than 20 pounds (Tr. 199).

Dr. Davis saw plaintiff on July 14, 2004 (Tr. 198). Plaintiff indicated that she was very pleased with her surgical results, but she continued to complain of intermittent right leg pain with numbness (Tr. 198). Plaintiff denied muscle weakness (Tr. 198). On examination, Dr. Davis reported that plaintiff had 5/5 strength in the upper and lower muscles; she had normal bulk and tone; she had decreased sensation in the right lower leg; she had normal reflexes and positive straight leg raising with the right leg; and she had negative cross straight leg raising (Tr. 198). Dr. Davis diagnosed residual mechanical lower back pain and right lower leg pain (Tr. 198). Plaintiff chose to pursue conservative treatment for her back and asked to be referred to a pain center for

evaluation and treatment (Tr. 198). Dr. Davis noted that plaintiff continue with the same work restrictions of no heavy, repetitive bending, twisting, or lifting of more than 20 pounds (Tr. 198).

On March 7, 2005, Dr. Allred again saw plaintiff and found tenderness of the lower back (Tr. 281). An MRI of plaintiff's lower back on March 2, 2005 showed no significant change since October 15, 2004 (Tr. 236).

In February, 2005, Dr. Allred saw plaintiff for complaints of back pain radiating into the right leg; "It started approximately three (3) weeks ago," plaintiff reported (Tr. 283). On examination, Dr. Allred indicated that plaintiff had tenderness to palpation of the lower back and gave her medication. Dr. Allred noted, "If symptoms fail to resolve, she will need re-referral to a neurosurgeon" (Tr. 283).

On March 1, 2005, Dr. Allred saw plaintiff for increased amount of back pain radiating into her right leg (Tr. 280). Plaintiff asked for a referral to a neurosurgeon (Tr. 280). On examination, Dr. Allred reported tenderness of the lower back, positive straight-leg raising on the right, and normal reflexes (Tr. 280).

On April 9, 2005, Dr. Allred again saw plaintiff for complaints of cough, congestion, and low back pain (Tr. 278). Dr. Allred gave her medications (Tr. 278).

On May 17, 2005, Dr. Allred saw plaintiff for lower back pain radiating into her right leg (Tr. 279). Plaintiff indicated that her back was "feeling some better" until she aggravated her back pain after washing her car when she slipped and fell (Tr. 279). Dr. Allred reported tenderness to palpitation of the lower back and equivocal straight-leg raising (Tr. 279). Dr. Allred discussed plaintiff's use of pain medications (Tr. 279). Plaintiff indicated that she took two to three pills a day

on a good day and four pills on a bad day (Tr. 279). Dr. Allred suggested referring plaintiff to a pain center for long-term pain management (Tr. 279).

On August 15, 2005, plaintiff had an injection into her lower back by Dr. Smolenski (Tr. 218). Dr. Smolenski indicated that plaintiff could return to work on August 16, 2005 (Tr. 219).

On September 16, 2005, Dr. Davis saw plaintiff for residual lumbar pain and right lower leg pain (Tr. 196). On examination, Dr. Davis reported that plaintiff had no tenderness of the back, normal stability, and normal strength and tone; her gait was intact; she had full range of motion and normal stability, strength and tone of her arms and legs; she had no sensory deficits; and she had normal reflexes (Tr. 196-97). Dr. Davis reviewed an MRI of plaintiff's back (Tr. 197). He diagnosed lumbago and neuritis, and he placed no activity restrictions on plaintiff (Tr. 197).

In December 2005, plaintiff went to the hospital after she fell during a hunting trip while trying to get up into a tree stand (Tr. 263-64). X-rays of her left foot and left leg were normal (Tr. 269).

Dr. Allred saw plaintiff on December 22, 2005, for complaints of pain, soreness, and difficulty walking due to left foot pain after the incident of falling out of a tree stand (Tr. 277). Dr. Allred indicated that plaintiff had swelling of the left foot and decreased range of motion of the ankles (Tr. 277).

On February 10, 2006, Dr. Allred saw plaintiff for cough, sinus drainage, and congestions (Tr. 274). Dr. Allred noted that plaintiff was alert and her chest was clear (Tr. 274).

On March 21, 2006, Dr. Allred noted that plaintiff needed him to complete some forms for her lawyer (Tr. 275). Plaintiff reported chronic, daily back pain which did not allow her

4

to sit for more than one hour at a time or stand for more than fifteen minutes at a time (Tr. 275). On examination, Dr. Allred reported marked tenderness of the lower back, normal reflexes, and equivocal straight leg raising with the right leg (Tr. 275). On March 28, 2006, Dr. Allred noted that plaintiff had tight trapezius muscle and tenderness of the lower back (Tr. 275).

On June 15, 2006, Eva Misra, M.D., examined plaintiff at the request of the state agency (Tr. 330-33). Dr. Misra noted that plaintiff continued to complain of back pain after surgery. She noted that an MRI from 2005 showed degenerative disc disease in the lower back. Plaintiff indicated that she could sit or stand for only 15 minutes and carry 5 pounds. On examination, Dr. Misra reported that plaintiff had 4/5 strength in the right leg and 5/5 strength in the other joints; she had full range of motion of her back except for decreased flexion of the lower back; and she had normal reflexes (Tr. 332). Dr. Misra opined that plaintiff could lift or carry 20 pounds occasionally and frequently, she could stand or walk with normal breaks for six hours, and she could sit without restriction (Tr. 332-33).

Dr. Littell saw plaintiff from October 2005 to February 2007 at the Oliver Springs Medical Center. The Court agrees with the defendant that Dr. Littell's notes are illegible (Tr. 348-363). In March 2006, Dr. Littell completed a Medical Opinion Form in which he opined that plaintiff could sit for seven hours in an eight-hour day and one hour at a time, stand or walk three-quarters of an hour in an eight-hour workday and one-quarter hour at one time, and lift up to five pounds frequently and up to ten pounds infrequently (Tr. 342-44).

In March 2006, Dr. Allred also completed a Medical Opinion Form in which he opined that plaintiff could sit for four hours in an eight-hour day and one hour at a time, stand or

5

walk for two hours in an eight-hour day and fifteen minutes at a time, and lift up to 10 pounds frequently (Tr. 345-47). Dr. Allred based his opinion on plaintiff's chronic back pain that radiated into her right leg (Tr. 347).

In June 2006, Frank Pennington, M.D., a state agency physician, reviewed the record and concluded that plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently, stand or walk for about 6 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday (Tr. 334-41). Dr. Pennington indicated that plaintiff could occasionally climb ladders, ropes, and scaffolds (Tr. 336).

In a new evaluation form dated July 25, 2007, plaintiff told Dr. James Fox that she "had back pain, but that she enjoyed the outdoors, camping, fishing, hunting, and swimming" (Tr. 391).

In August 2007, Dr. Fox noted that plaintiff reported that injections had helped her "quite a bit" (Tr. 382). In November 2007, Dr. Fox saw plaintiff for follow-up on right lower back pain and leg pain (Tr. 366). Plaintiff indicated that she was doing okay and that she denied side effects from her new medications; she indicated that she could be more active with medications (Tr. 366). Plaintiff was able to do chores, cook and hunt (Tr. 366).

**TESTIMONY EVIDENCE**

At the hearing before the ALJ on February 19, 2008, the plaintiff testified that she was divorced and that she and her two children owned a mobile home, and raised chickens, dogs and cats (Tr. 12). Plaintiff stated that her children cared for the animals, and did most of the

6

housekeeping and cooking. While the children are at school, she "lays around" (Tr. 21). Plaintiff has a driver's license, drives her children to school, and drove recently to the store (Tr. 7-8; 17-18). Plaintiff's prior job was sewing machine operator, which she quit because of back pain and leg problems (Tr. 15). Plaintiff said that she liked to hunt, fish and camp, but she claimed not to have done so in several years (Tr. 14; 17).

## **DECISION OF THE ALJ**

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since August 21, 2005, the alleged onset date.

3. The claimant has the following severe impairments: history of small L5-SI disc herniation and L5-SI micro diskectomy, lumbar degenerative disc disease, mild degenerative joint disease in the right knee, and hypertension.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b)

7

>           except that she cannot perform more than
>           occasional climbing of ladders, ropes or
>           scaffolds.
>
> 6.        The claimant is able to perform past relevant
>           work as a sewing machine operator. This
>           work does not require the performance of
>           work related activities precluded by the
>           claimant's residual functional capacity.
>
> 7.        The claimant has not been under a disability,
>           as defined in the Social Security Act, from
>           August 21, 2005 through the date of this
>           decision.

(Tr. 42-48).

The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-5). Therefore, the ALJ's decision stands as the Commissioner's final decision subject to judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## **STANDARD OF REVIEW**

If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Commissioner of Social Security, 375 F.3d 387 (6th Cir. 2004). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir. 1987). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Secretary of Health and Human Services, 790 F.2d 450, 453 n.4 (6th Cir. 1986); and see Dorton v. Heckler, 789 F.2d 363, 367 (6th

8

Cir. 1986) (holding that, in a close case, unless the Court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

Plaintiff argues that the ALJ erred in finding that she retained the residual functional capacity to perform a range of light work, because the ALJ did not give "appropriate weight" to the opinion of plaintiff's treating physicians, Dr. Allred and Dr. Littel. She also objects to the ALJ's finding that the plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible (Tr. 47).

The Commissioner asserts that substantial evidence supports the ALJ's residual functional capacity finding for light work. The Commissioner argues that this finding was consistent with the opinions rendered by plaintiff's neurosurgeon, Dr. Davis and by the consulting doctor, Dr. Misra.

The Court finds that the amount of weight given by the ALJ to the opinions of Dr. Allred and Dr. Littel was appropriate. The ALJ may not assign controlling weight to a treating physician's opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; Walters v. Commissioner of Social Security, 127 F.3d 525, 530 (6th Cir. 1997). However, if the ALJ rejects the opinion of the treating physician, the

9

ALJ "must still determine how much weight is appropriate. . . and to always give good reasons in the. . . decision for the weight given to the treating source's opinion." Blakley v. Commissioner of Social Security, 581 F.3d 399 (6th Cir. 2009). In short, the ALJ must adequately explain the weight given to the opinion of a treating physician. Id.

In the present case, the ALJ identified the strong medical evidence in the record that conflicted with Dr. Allred's extreme opinion about plaintiff's limitations (Tr. 45-46). Specifically, the ALJ noted that plaintiff had undergone a number of clinical diagnostic tests– x-rays and scans by Dr. Allred and Dr. Littel and that these tests were essentially normal and benign and did not indicate any medical impairments that would support the limitations these doctors advanced. Dr. Littel conflicted with Dr. Allred. In addition, Dr. Davis, the neurologist, said that the plaintiff had improved enough post-surgery to return to light duty work and that she had no functional restrictions at all (Tr. 180-206). Moreover, Dr. Misra examined plaintiff and assessed that she could perform a wide range of light work, with certain postural limitations (Tr. 330-333). In addition, the ALJ noted that a state agency physician, Dr. Pennington, evaluated the medical evidence in June 2006, and, in his assessment, found plaintiff could perform medium level work (Tr. 334-336-46)

Plaintiff criticizes the ALJ's credibility assessment, but her arguments are insufficient to overcome the significant deference owed an ALJ's credibility finding. See Cruse v. Commissioner of Social Security, 502 F.3d 532, 542 (6th Cir. 2007) ("[A]n ALJ's credibility determinations about the claimant are to be given great weight. . ."). In the present case, as in Cruse, the plaintiff reported that her daily activities included washing dishes, light cooking, and doing laundry (Tr. 366). The plaintiff in Cruse could shop and read, and bathe herself. In the

10

present case, the ALJ noted that the plaintiff also participated in hunting and fishing and activities such as car washing, despite her claim of almost total inability to do activities of daily living (Tr. 47).

Accordingly, I find that the ALJ properly reviewed and weighed all of the medical source opinions, the objective medical findings, and plaintiff's credibility to determine that she could perform a range of light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that the plaintiff's Motion For Judgment On The Pleadings [Doc. 11] be **DENIED** and that the Commissioner's Motion For Summary Judgment [Doc. 15] be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).